Case number 23-7173. David O'Connell v. United States Conference of Catholic Bishops Appellant. Mr. Blomberg for the appellant, Mr. Doble for the appellee. Good morning, Council. Mr. Blomberg, please proceed when you're ready. May it please the Court, Daniel Blomberg for appellant. I'd like to reserve three minutes for rebuttal. The plaintiff wants to take back an offering he made to the Pope because he doesn't approve of how the Pope used it. He doesn't allege he asked the Pope for his money back or invoke the canonical remedies available from his church. Instead, he's sued in civil court. That fails for two reasons. First, it violates the religion clauses. This case requires second-guessing the religious meaning of inviting Catholics to support their Pope's charitable works, invited by a priest, from the pulpit, during Mass, an ancient worldwide offering. Religious entanglement here is inescapable as a matter of law. And that's why these claims can and should be dismissed by this court now. But is there really a request to offer money for this purpose with a statement of why you're doing so? Because that's where you seem to be going with the church autonomy document to suggest kind of sincerity in the beliefs or what the religious doctrine is or what are some of the internal workings of the court, as opposed to what the claim here seems to be is you're submitting it for this purpose. And is the purpose for which you're submitting it for the purpose for which it has been used? Right, you're right. And so the issue is and the difficulty is that the offering, the invitation to give to the church is on its face religious in nature. It says you have the opportunity to submit to or to assist in the charitable works of Pope Francis. Now, to be clear, we don't know exactly what the plaintiff heard because he doesn't allege that. If you look at paragraph 34 in the complaint, it's the only place he says anything about what he heard and he doesn't tell us exactly what he heard. Instead, he said USCCB directed the parish priest to say something, which raises another church autonomy problem. But the one we're focusing on here and to your question, Your Honor, is if you go to paragraphs 21 and 22 of the complaint, I think that's all you need to look at in this complaint to see where this case should go. Paragraph 34, 21, and 22. He says this is exactly what USCCB said that I want to hold them liable for. And that is that you have the opportunity to assist in the charitable works of Pope Francis to be a witness to charity and help him help those who are marginalized. Counsel, your biggest problem is, from my view, the collateral attempt at collateral order. You're in a losing area almost by definition. There's no case, and I've looked at all of them, that supports your position. None. The Supreme Court had one on this issue. And with Justice Alito pointing it out, they refused to grant cert. All the other circuits have gone the other way. The cases you cite were not collateral order cases, or they involve a situation you're trying to have kind of this grand First Amendment notion. If it's a First Amendment issue, it can be collaterally attacked. That's not true. And the cases you cite are about situations in which the plaintiff had been enjoined or blocked from doing something positively. That's an entirely different situation. But what I want you to understand, at least from this judge, is I've been involved in this area for years and years and years. It is almost impossible to get a collateral order attack. And there is no First Amendment exception broadly, and the Religion Clause exception has never evolved in the way you wish it would. Never. Thank you, Your Honor. So, a couple points on that. So, I think the seminal case is from Judge Rogers of this court before she was on this court, when she was the chief judge for the D.C. courts. And she said there that the Religion Clauses do provide an immunity against a claim that on its face and as a matter of law requires inquiry into religious matters. And that's been the position of the D.C. courts since 1990. It's been reaffirmed several times. The district court here, and why is the district court wrong, said on its face it doesn't. Well, that's because, Your Honor, I mean, the oral order we have here doesn't get a... Churches are not immune from civil suit. Correct, Your Honor. So, we know as a starting point that churches can be brought, even though they're churches, and they're involved with religion, that doesn't mean they can escape all civil suits. That's absolutely wrong.  So, now you're in collateral order land, and that's the worst place to be. Because our case law is so clear, including the Supreme Court, we don't allow it. It's got to be one of, I think, eight or nine categories. That's it. And you're not in it. And every circuit that has seen this has rejected it. Well, and beyond Judge Rogers' order in the White case, there was also the Fifth Circus decision in Whole Woman's Health and the Seventh Circus decision in McCarthy, both of which were dealing with religion clauses defenses. And the religion clauses defenses were rejected by the district court, and the courts of appeals exercised collateral order jurisdiction to address it. And the key here, the key, and I think you see this in the other cases, too, in Balea, in Judge Chinn's decision in Balea, and in Judge St. Eve's decision in Garrick, the key is that the claim has to, on its face, as a matter of law, require inquiry into the religious matters devoted entirely to the church. Can I ask how this would play out? So, I mean, I share Judge Edwards' concerns about this because, I mean, you at least have to acknowledge that the Supreme Court has been pretty restrictive in how collateral orders can come up, and its cases point to a very circumscribed inquiry as to what are the category of situations in which collateral order is available for all kinds of understandable reasons about the practical implications for the litigation. Is the way this would work, given the way the church autonomy doctrine works, as follows, that you bring a collateral order appeal now. Let's suppose that at this stage, the court disagrees that, let's suppose, just for argument purposes, that you get collateral order review. Under your argument, you should. And then the court disagrees that there's an entitlement to church autonomy at this point. Then it goes back down, and as Judge Cobb herself contemplated, the proceedings go forward, and then the claims start to take shape, and then there's another assertion of church autonomy that says, wait, okay, now that we see what this claim is, where it's really going, we've narrowed the allegations, we've sort of rooted out the stuff that's extraneous, and now we see it actually goes to the heartland of something that's ecclesiastical and can't possibly be second-guessed. And then that assertion is rejected, and then you get another collateral order appeal. Yes, Your Honor, that would be correct. And then that could go on as the case winnows. It would be similar to the qualified immunity context, Your Honor. Well, sort of. I mean, you're right that it's similar in that in qualified immunity, you can have more than one collateral order appeal. Yes, Your Honor. But I don't know that qualified immunity has the degree of fluidity that would seem inherently to attend church autonomy, given that all the cases, including our cases, where we've contemplated the same sort of dynamic that Judge Cobb contemplated, that there may be ways in which the litigation develops that brings into sharp relief church autonomy concern that might not otherwise be apparent on the face of things. And it just seems like it's not a fertile ground for collateral order review when there's that degree of fluidity and possibility of repeated. In fact, what seems more appropriate in that context is 1292B, because that's classically one where, which I don't think you've asked for yet. I mean, you still could, I think, and we'll see what happens with that. If this ends up going back down, I don't mean to predict what's going to happen, but 1292B kind of takes into consideration, based on the statutory criteria themselves, exactly these sorts of questions. Is this something that ought to go up right now? Does it make sense for it to go up right now? Is it reasonably in dispute? And does it make sense, given the practicalities of litigation, that it's something that the Court of Appeals ought to look at right now? Yeah, and let me push back slightly on the idea that it's so, the right is broad in the sense that it protects the church, but only in certain areas, and it's deep in those areas, right? And so, again, the D.C. courts, since 1990, have recognized the right of collateral order appeal under the Cohen factors. Judge Rogers walked through every element of the Cohen factors, said, these apply right here. There have only been a handful of cases in those 35 years since that time that have gone up on collateral order, because you still have to show that the claim on its face, and as a matter of law, creates the church entanglement problems that we're talking about here. Maybe the defense just wins a lot, or it just doesn't come up a lot, so you don't have that many collateral order opportunities. You may have done the analysis and shown that they're actually— Well, I think, actually, that is part of it, Your Honor, in that church autonomy cases are fairly rare. I mean, this court has seen very, very few over the last 40 years. Really, we're talking about less than a handful. And just because a church is involved in a suit doesn't mean a house of worship is involved in a suit doesn't mean there's a church autonomy issue. And even then, you have to ask the question of, is this claim on its face deficient? And so, imagine the claim is, is the pope Catholic? Federal courts don't adjudicate that. Civil courts don't adjudicate that. This case asks, is the pope's charity Catholic? And we think the answer is exactly the same. But does it ask that? Or does it ask, you've asked us to donate money. You said the money was going to this cause. And did the money go to that cause? Why can't that be segregated out of any notion of what the charity is and what the charity will do, what the religious beliefs behind the charity are, et cetera? Yeah, and I think, actually, this goes to, I think, page 49 of my friend's on the other side's brief really distills the issues in front of this court that helps on exactly that issue. So first they say, we're not contesting that the pope used this money in a way that is authorized. It's a part of his authority. He is using the money in a way he believes is correct. He can invest it in overhead. He can invest it in an interim investment so the money grows and he can use it in other charitable ways. We're not contesting that. So that's off the table. And then he says, and we arguably agree that if the invitation had been give this money to glorify God, that's probably not something federal courts could entertain. But, he's saying, because the invitation here is support the charitable works of Pope Francis and be a witness to charity, that means this case can proceed. Those terms, on their face, are religiously entangling. For any court to adjudicate the claims in this case,  for any court to adjudicate the claims in this case, they're going to have to ask a religiously entangling  What a reasonable parishioner would have thought when they heard the priest from the pulpit during Mass saying, give to this ancient offering that's called Peter's Pence because it's for the Pope. Counsel, all you're arguing is what should happen at the end of the case. I can't get over the law regarding collateral. You want to try and move away from that. The law is too clear. This is a matter of all the ones I can think of off the top of my head. It's so undoubtedly effectively reviewable after trial. It's almost amusing. This is straightforwardly reviewable. All these arguments you're making now, if the district court somehow went astray and reached where the district court should have gone, it will be caught on review. There's no case.  You mentioned one or two, for example, where there was some pending action against the party, an injunction or whatever, and the court stepped in there. Barring those one or two cases, there is no case that allows a collateral or repeal in this area. Certainly not your broad, it's a First Amendment case, so it should go up. There's no such law. Let me clarify. If it's effectively reviewable, you lose, right? That's a three-part test. You must be able to answer that. This is effectively reviewable. It is not effectively reviewable. You're right, we do have to show that. Just to clarify, we're not saying that every First Amendment defense goes up on interlocutory repeal. We're saying that if the claims on their face, the judicial action that's being appealed on its face, requires interference, a violation of the right in question, then it can be reviewed. Why? Think about the theory of collateral order. Why? You realize how many of the claimants in these collateral order cases all come in and say, this is a really important issue to us, Your Honor. This will ruin us if we have to try this case, the forum on convenience cases, this case should be decided in another country, except they all come in with exactly the same argument you're making. That is, this is unfair, it's a waste of time, our contract says this, blah, blah, blah, and we have said routinely for years and years and years, you wait until the end of the case, and then we'll see if there really is a problem, and we won't have to guess. And Your Honor, if our argument was this is a waste of time, it's inefficient, then I would agree, but that's not our argument. Our argument is that asking the question of what the Pope's charitable works are is facially entangling. No, you're going to say that's not the test. The test is not whether we look at the merits of the claim from the person who wants collateral review, and see whether it's facially clear who should win and who's going to lose, because the Court of Appeals would be flooded if that was the test. That is not the test. The test, Your Honor... It may be facially clear, and you still have to go through the process so that we have a clean record and the courts can operate the way they're supposed to operate. So, I think the test, Your Honor, it has to, it cannot be just an efficiency argument. It has to be a right of sufficient importance, which is... No, no, no, no. It's not just the right of sufficient importance. Correct. Not just that, Your Honor. I agree. But it also has to be that the right will be lost if the case is permitted to proceed. Right, and no right will be lost here. Yes, Your Honor. No, not until someone orders something and if the district court doesn't order something that's not reviewable, then you can't make that claim, because the district court can do nothing more than issue an order which would be subject to review if you think the district court went too far. Your Honor, and this court's decision in Woodrick v. Marsh, even limited discovery, transgresses the right at issue if we're right that we have an immunity here. Was there an injunction there? No, Your Honor. It was Westfall immunity that was at issue. And so, the question is, does the church have a right against interference in the internal workings of its decision-making process? And if there's a colorable argument that the church does have that right, and that the claims here violate that right, then this court has jurisdiction to consider that very, very narrow issue if there are disputes. If you conceive of it as a right that means that the church shouldn't even have to undergo litigation to determine the applicability of the defense, and there's always going to be this dynamic, and it came up with attorney-client, that the way attorney-client works is that actually there shouldn't be a disclosure to begin with, and the Supreme Court rejected that because it kind of conceptualized the right in a little bit of a different way. And so, it takes on a dimension of circularity with it. So, Your Honor, I think the key here is not, you're right that there has to be some degree of litigation to determine the applicability of defense in some cases. A good example of that in the church autonomy context is the ministerial exception cases, right? Do we know if this person's a minister? Sometimes, it's clear, like in this court's Minker decision, on the face of the pleading, it was clear that person's a minister, case closed, as it regards their age discrimination claim. I'd like to get to their contract claim in just a second, because I think that's really helpful with your questions, Judge Childs. But the when it's clear on the face, allowing any further proceeding is violative of the right. The right here we're talking about is a right to autonomy in the church's eternal affairs. So, the court has the ability to question, are we addressing that autonomy? Have we got into that space of faith, doctrine, and internal church governance the Supreme Court talked about in Our Lady? If we have, then case should be over. Again, is the Pope Catholic? We don't get to resolve that. Is the Pope's charity Catholic? That's what this case is about. It also isn't something that courts should be able to resolve. And I think the Minker case is really, really helpful in this point. You could, in that situation, there is 1292 B, and there could be mandamus. I mean, I was we've had cases where even after Mohawk, in the attorney client context, in the attorney client privilege context, if there was a clear case in which attorney client privilege should have been granted, even if it's an early stage in the proceeding, litigants have gotten mandamus relief in our court. Two points on that, Your Honor. One, Mohawk expressly carves out structural constitutional defenses. And the Billard case by Judge Harris says church autonomy is structural constitutional defense that protects not only the right of the church, but also the duty of the court. Two, on 1292 B, plaintiffs do, or defendants, churches do try that defense. They tried it in Garrick, the court said no. They tried it in Bailey, the court said no. We looked at it here, and the judge's oral order didn't indicate any sort of thinking this was a close issue, and so it didn't seem like we had a reasonable path forward. At this stage, maybe. I mean, I think that's one of the salutary aspects of 1292 B in this context, is that it could be that a case gets to a stage where a district court could conclude, okay, we're really joined issue at this point, and I'm going to say that there's no church autonomy defense that precludes going forward, but I can see that there's a reasonable question about this, and so I'll grant 1292 B. Right, and maybe, you know, if we had been at a different time, the Huntsman case, the en banc review had already been granted, the Huntsman oral argument, which pretty clearly indicated that we're talking about very severe religious autonomy issues, you know, maybe Judge Cobb's decision would have been a little different, but we had a short oral order that indicated, you know, decided two cases. So, you know, and that's part of the right here, is the ability to go up, because, you know, if the court says no in 1292 B, we can't, right? And so we need to be able to, if the court has gone outside its lane, which is what Judge Harris talked about in Billard, have the right to get a court to review that. Now, this court doesn't have to... Outside its lane because it hasn't rendered a ruling on the merits of the case. That's exactly why the collateral audit doctrine is what it is. You know, what joined the crowd of litigants who all believe they can't believe they're having to wait to get the final judgment, but that's the way we work. You are not an exception to the rule, and you're not presenting a compelling case to show that. Merely because you think, this is so onerous, this is so unfair, does not overcome the law which says you wait, unless it's effectively unreviewable. And it's not effectively unreviewable by your merely saying, but this is really important to us. That's not the test. And I agree, it's not the test, Your Honor, and I see my time is up, so just one point, and I'll sit down. But the... If we're not arguing, it's because it's onerous or unfair, we're arguing because it is inherently entangling on its face to have a reasonable parishioner answer the question of do you want to assist in the charitable works of Pope Catholic? Pope Catholic? Pope Francis. And that's precisely the issue here. I'll reserve the balance of my time, Your Honor. Thank you. Thank you, counsel. We'll give you some time for rebuttal. Mr. Dobley. Good morning, Your Honors. May it please the Court, Gabriel Doble on behalf of the Appellee David O'Connell. The U.S. C.C.B. asks this Court to expand the collateral order doctrine in a way that no circuit has done, that four circuits have expressly declined to do, and that the Supreme Court has repeatedly cautioned against. U.S. C.C.B. seeks a new categorical right to immediate appeal whenever any defendant in any case raises a church autonomy defense on a motion to dismiss. As this Court recognized in the Doe v. Exxon Mobile case, such a holding would be directly contradictory to the Supreme Court's repeated admonitions that the doctrine remain narrow. And to your point, Chief Judge Sreenivasan, about the repeated collateral appeals, if U.S. C.C.B. is right, it's not just motions to dismiss that would be immediately appealable. It would be a motion to dismiss, a motion for summary judgment, and every single discovery order in between. All a religious defendant would have to do in response to a document production request, in response to interrogatories, in response to depositions is say, this discovery intrudes on our religious autonomy. They'd have an immediate right to appeal the district court's order granting that discovery. But that is based upon the assessment of what the particular discovery request, like the judge could just look at that before allowing the discovery. That's correct, Your Honor, but all you, if U.S. C.C.B. is right, all it would have to do is raise a colorable argument that that discovery intrudes on his church autonomy, and he'd get an immediate right of appeal with full merits briefing. The point I'm getting at is that all the arguments seem to have gone to you're going to make us go through all of this expensive discovery. They're going to already have all these answers. They're going to invade into our provinces, you know, our religious institution, and then you're asking the court to rule. What I'm asking you is that when you, as a plaintiff, craft these questions, craft these requests for production or requests for admission, would the district court be able to just look at that questioning on its face and decide what to allow in or exclude or determine that, okay, yeah, you really are getting into this church autonomy doctrine, and so, therefore, that's enough. Just freeze the litigation, basically, at that point, and allow it to go up right then, because the other side is arguing that we're going to go through all this expense just to get right back here. Yes, that's exactly right, Your Honor, and that's the heartland of what the district court is in charge of, is handling discovery, and the district court, if a discovery request goes too far, can say this intrudes on church autonomy, I'm going to limit this discovery request, and the district court, in this case, Judge Cobb, said she would do that. Okay, but what do you anticipate that you would ask for, like to get to this claim? Because earlier, I was saying, it sounds like your argument is there was a message from the pulpit that says, donate to this charity. Then the person donates, and then you could just look at the records to say, did it just go to the charities that you agree that they have the opportunity or authority to send to? Well, it's not just a message of please donate, and my friend on the other side omitted some important language from the USCCB promotional materials, and that language is that the funds, and I'm quoting from the bulletin announcement. Yeah, and I did mean to add that you have a written document as well that you're relying on. Correct, there's a written document and there's also a document that USCCB sent to this text from the pulpit. And what both of those documents say is not just please donate this money for the charitable works of Pope Francis, it's please donate this money and the funds will help victims of war, oppression, disease, and natural disaster. So if this court were to reach the merits of the church autonomy defense, which I don't think it should because it doesn't have jurisdiction, but if it were, the district court got this right that this was a classic claim of fraud that happens to have a church as a defendant. All those words, victims of war, oppression, disease, those are secular words. It doesn't take any interpretation of canon law to understand what they mean. So for that reason too, this appeal fails. I mean, I think even Judge Cobb, I mean, let's just, because we're on this axis right now, go past the collateral order question just for a second. I mean, I think Judge Cobb recognized that depending on the way the claims in this case take shape, they could well bring into play church decisions that may be problematic for courts to investigate. That's correct, Your Honor. She expressly recognized that it's always possible that a case against a church could bring into play religious issues. And she expressly said, I can't and I won't rule on those issues. And there's nothing about the nature of your claims that immunize it from that kind of scrutiny because even though you have claims that at some abstract level sound in broad conceptions that you can understand generically, they don't necessarily intersect with church decisions, the terrain is such that those claims, the way they're litigated and the way the merits of them may shake out, it could encroach on that territory. That's correct. We're not saying that churches are subject to every claim conceivable. We're saying that churches are subject to secular claims that can be resolved using neutral principles of law. And that's been something that the cases all over the country have recognized. And even in the Huntsman case in the Ninth Circuit, Paul Clement, counsel for the church in that case, acknowledged that oral argument if a church makes a specific misrepresentation about how solicited funds will be used, that's a fraud claim and a plaintiff can bring that claim. And that's exactly the type of claim that we have here, at least at the pleading stage, like Judge Cobb determined. I'll go back to the jurisdictional point for a second. The lack of jurisdiction here doesn't mean that defendants who actually need an immediate appeal won't get one. As you pointed out, there are mechanisms established for litigants who actually need an immediate appeal to have one. Those include section 1292B and the writ of mandamus. The Supreme Court and this court and many other circuits have recognized that these avenues of immediate appeal are preferable to church autonomy, or excuse me, to the collateral order doctrine. Because unlike the collateral order doctrine, they limit the right of immediate appeal to litigants who actually need it rather than creating an entire category of immediate appeal for any defendant who could conceivably raise a colorable church autonomy defense. I'd like to highlight two cases that I think are specific, that are especially on point to my friend on the other side's argument of a right not to be tried here. The first is the Supreme Court's decision in the Ohio Civil Rights Commission v. Dayton Christian School case where even in the context of an invasive government intrusion investigation into an employment discrimination claim against the religious school, the Supreme Court said church autonomy rights can adequately be vindicated in a post-investigation judicial review. The religious school in that case sought to enjoin a state administrator proceeding against it investigating a sex discrimination claim. The Supreme Court held under the Younger Extension Doctrine that that investigation could proceed, and an important basis for that holding was that the church's church autonomy rights could adequately be vindicated in a post-investigation judicial review. That forecloses the argument on the other side that church autonomy rights are effectively unreviewable if not vindicated before that investigation occurs. Second, I'd like to highlight this court's decision in the ExxonMobil case in which this court held that the political question doctrine is not collaterally appealable. The other side's argument is that the structural limitation on the judiciary's power to decide religious issues gives them a right not to be tried, and this court rejected that precise argument in the separation of powers context in ExxonMobil and held that the defendant in that case made the same type of argument that mere adjudication of the claims would constitute judicial intrusion into the executive branch's foreign policy interests in Indonesia. And in that case, actually, the State Department filed a letter with the district court saying litigating this case could interfere with our foreign policy interests. Even in that context, the court said this type of structural limitation does not confer a right not to be tried. So for the same reasons here dealing with church autonomy, that sort of structural limitation on the judiciary's power does not confer a right not to be tried. I'd be happy to answer any other questions the court has. Otherwise, I'll submit. Thank you, Mr. Blomberg. Thank you. Mr. Blomberg, I'll give you the three minutes that you asked for for rebuttal. Thank you very much, Your Honor. Just a couple quick points. This court has never seen a case like this. No court has ever seen a case like this. This case tries to make the U.S. Conference of Catholic Bishops liable for what a parish priest said about how the Pope was spending his money in a worldwide offering. I have not seen a single case in the history of our country that comes anything close to what the plaintiff is asking this court to allow here. And he says that the court can manage discovery below. Our point about discovery is not that the court can't manage discovery. Obviously, the courts can. Though, I hasten to point out that in Catholic University, this court emphasized that oftentimes, it's very hard to do in the religious context. And in fact, a well-respected judge of this court threw up his hands afterward and said, actually, we couldn't. And we violated the establishment clause by our process of trial here. And the whole Women's Health case out of the Fifth Circuit said exactly the same thing. But what is so different about, for example, courts managing discovery with the attorney-client privilege? In many instances, the court takes the matters under review in camera proceeding and dissect all the time, you know, what's available to the parties or not. Because that very process, Your Honor, is what violates the Church Autonomy Doctrine. To require the Church, to require the bishops to turn over their communications with the Holy See, which is what a plaintiff has requested here, is a violation of the Church Autonomy Doctrine. But you have your colleague on the other side suggesting that the court could freeze the litigation with respect to just looking at the questions propounded, requests for remissions, requests for documents, on the nature of what's being asked before you even turn over anything. Well, two points on that, Your Honor. One, my friends on the other side say that they need and cannot succeed in their case without getting a copy of every expense the Pope made to this offering that's collected from Catholics worldwide, has been for over a thousand years. But in your written submissions, you state it's going to war, humanitarian, this, that, and the other. So if there were a listing of expenses turned over, it should show to those types of groups that are there, not to challenge whether you believe in the groups or not, but just that these are the types of groups under those subject matters. Well, and that's exactly the problem, Your Honor, because this is not a case where the plaintiff is challenging that the Pope has used the money in a way that's unauthorized by the Church. He bought himself something nice, that's not permissible, basically theft. He's not saying that. He's saying, I can't challenge that. And so he admits that it's okay for the Church, for the Pope to have exercised his judgment to invest these funds and to run the Holy See, which is where many pilgrims come every year. It's a very important charitable purpose. And so he wants, and he requires on its face, his claims require, a reasonable parishioner. The civil courts determine what a reasonable parishioner, when they hear you can contribute to the charitable works of Pope Francis, including to victims of war, that that must mean you can't invest it. You can't put it toward the Holy See. That's his argument. His argument, it must immediately and exclusively go only to victims of war. And that's what a reasonable parishioner would interpret this. That's not something courts can determine. It's only an argument, counsel. That's not a judgment of a court. You're assuming that because a party argues something, that's the way the district court will deal with it. The district court is assured as otherwise. The district court has already ruled that the defendant's argument here has failed in terms of... Also, keep forgetting that the Church is not immune from civil liability with respect to secular matters. Exactly, Your Honor. With respect to secular matters, this is a religious matter. Why do you have to say the Pope? The discovery might be any directives you receive, any directives that you... Not about the Pope, the directives with respect to these contributions. So the plaintiff's discovery request, which they say they need and cannot proceed without, that's a representation they've made to the district court, and they haven't withdrawn before this court, including they want all documents submitted to or received from the Holy See, Vatican City, Apostolic Nunciature, and any of their subdivisions, agencies, or agents related to the Peters-Pence collection. Your Honor, that's a worldwide request for documents going to the Holy See. Has it been ruled on yet? Has it been ruled on yet? Your Honor, the point is... Has it been ruled on yet? No, Your Honor. Okay, then we don't have the faintest idea what the district court might do. Again, that's where the collateral audit doctor comes in. We'll wait and see. It's effectively reviewable. And my point, Your Honor... Or, as my colleagues pointed, there are other ways to come up in the event of a really serious problem and not use collateral audit. Two points on that, Your Honor. One, this is a really serious problem. This is a very serious problem. My friends on the other side haven't identified a single case that's like this one. I'm not aware of a single case like this one. And then two, Your Honor, the point isn't that the district court, Judge Cobb, couldn't restrict discovery. It's that the plaintiff has said, has represented that he needs this discovery, that he cannot proceed without it. In fact, he's successfully getting it in other cases like this, like the Gospel in Asia case that he emphasized below. And so, if this case proceeds, that's where it's going, because he can't proceed otherwise. That's precisely the point. That's such a silly argument, respectfully, counsel. You say to a district court judge, I can't proceed unless I get this in discovery. The district court judge can say, okay, I'll dismiss. The district court can restrict discovery as she or he feels it's appropriate. Your argument makes no sense. Well, and that's part of my concern, Your Honor, is this was already represented to the district court in the motion to dismiss papers. The district court hasn't ruled on this. The district court, knowing that the plaintiff said, I have to have this to win, still said this case can go forward. It may have been that the district court, in saying that it can go forward, had in mind a way of dealing with the discovery request. We just can't know right now. It doesn't mean that what the district court had in mind was, I know that the plaintiff represented this, and I'm prepared to grant it. We just don't know. If something happens as it goes forward, there are these other mechanisms potentially to get interlocutory review. If this truly is a path-breaking historical case that's going to raise some fundamental concerns, the likes of which the case law hasn't yet seen, those are circumstances in which there are mechanisms in place now to get interlocutory review, at least at that level of abstraction. But only based on the argument from our plaintiff, only with the district court's discretion or under the heightened mandamus standard. Not under the standard that should be appropriate, that we argue here, that Professor McConnell argues here, that Professor Laycock argues here, and many other courts have recognized, including ten appellate court judges, on this precise issue, that there should be a right for repeal in this instance. Thank you very much, Your Honors. And I took a lot of those briefs to suggest that we, as this court, need to recognize the church autonomy doctrine, and I don't think that there's been any suggestion here that we don't recognize the doctrine. Correct. The point isn't that this court has recognized it for a long time. The Minker case recognizes the autonomy of the church expressly, so does the Catholic University case, so does the Duquesne case, Great College, Carroll College, Great Falls. All of those cases have recognized church autonomy. The question here is the scope. Does the scope of church autonomy protect you from a court from inquiring into whether the Pope's charity is Catholic? We think the answer is yes. Thank you, Your Honors. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan; Childs; Edwards